Dear Mr. Lawrence:
On behalf of the City of Bastrop, you have requested an opinion of this Office related to the legal responsibilities and requirements for the burial of paupers. Specifically, you have asked the following questions:
 1. May the City of Bastrop bear the cost of burying the remains of paupers by furnishing graves in City-owned cemeteries without cost?
 2. If so, what guidance can you provide to assist the City with determining whether or not a person or family has pauper status, or is sufficiently indigent, to qualify for burial as a pauper?
For the reasons set forth below, it is our opinion that the answer to your first question is in the affirmative. The answer to your second question has been addressed by this Office in the past and is restated herein.
May the City of Bastrop bear the cost of burying the remains ofpaupers by furnishing graves in City-owned cemeteries withoutcost?
The answer to this question lies within a reading of one portion of Title 33 and is supported by a portion of Title 8 of the Louisiana Revised Statutes. Most importantly, La.R.S. 33:1565(A) states that:
 (1) Upon completion of an autopsy or completion of the coroner's investigation, if the investigation reveals that an autopsy is not required, the coroner shall release the body to the family or friends for burial. *Page 2 
 (2) The coroner shall arrange for the burial of paupers, preferably by a Louisiana licensed funeral home. The burial expenses shall not exceed the actual cost of the service, and shall be paid by the parish or municipality in which the death occurred. However, such expenses for patients or residents of any state-operated health care or treatment facility shall not be paid by the parish or municipality in which the death occurred, but shall be paid by the state. The state or any municipality or parish may establish a maximum amount which it shall pay for individual burial expenses. [Emphasis added].
Thus, it is clear, under Louisiana law, that following the completion of an autopsy or coroner's investigation, the coroner shall arrange for the burial of paupers and that the cost of that burial shall be borne by the parish or municipality in which the death occurred except for patients or residents of State-run facilities. There are two important issues that must be examined further in this statutory charge: (1) what is the meaning of the term "service"?; and (2) is the parish or the municipality the entity responsible for bearing the associated costs?
From the original use of the term "service" in the above-quoted language, it is unclear whether the term is intended to encompass the service of preparing the body for burial and the actual burial or whether the term should be interpreted more broadly to encompass funeral services. It is the opinion of this Office, from a commonsensical and in pari materia analysis of the statutory language, that the term "service" refers to the minimal preparation of the body for burial and the actual burial and that it does not encompass funeral services. While it is reasonable to assume that the public is served by the burial of unclaimed or pauper human remains, there is little public benefit to the provision of public funds for funeral services. In addition, when establishing the State's legal obligation toward the burial of those that die within the care of a State-run institution, the Legislature specifically noted that the State is only responsible "for individual burial expenses." La.R.S. 33:1565(A)(2). Thus, there is no support in the law for the use of public funds for anything more than the costs of body preparation and burial.
As to the question of which entity, the parish or the municipality of death, is responsible for the costs of the burial of paupers, it is the opinion of this Office that it is reasonable to interpret La.R.S. 33:1565 thus: for those who have died within the legal geographic limits of an incorporated municipality, it is the municipality's responsibility to bear the costs of the burial of the remains. For those who have died outside of the legal geographic limits of any incorporated municipality, it is the parish's responsibility to bear the costs of the burial of the remains. See also, La. Atty. Gen. Op. No. 80-1536.
Based upon the foregoing analysis, it is clear that the City of Bastrop must, when a pauper dies within the City's legal geographic limits, bear the costs of the burial *Page 3 
of those remains. As part of the costs of such burial, the provision of a cemetery space is necessary. It is reasonable, in order to reduce the costs of the burial of paupers to the public, to provide cemetery spaces within City-owned cemeteries without cost. In this regard, it is the opinion of this Office that, because the City is obligated to bury paupers under the above-noted conditions, and because of the City's responsibility as the fiduciary of public funds, the costs of such burials should be minimized to the extent practicable. We believe that these ends are best accomplished by the provision of a City cemetery space rather than the purchase of a cemetery space in a non-City cemetery.[1]
All of the above analysis is consistent with the charges of Title 8 of the Revised Statutes, which states that:
 every dead body of a human being lying within this state, and the remains of any dissected body, after dissection, shall be decently interred or cremated within a reasonable time after death.[2]
Finally, although La. Atty. Gen. Op. No. 94-564 narrowly interprets both La.R.S. 33:1565 and La.R.S. 46:571 as only allowing for the burial of paupers at parish or municipality expense upon the involvement of the coroner, it is the opinion of this Office that such a narrow reading is incorrect.[3] Louisiana Attorney General Opinion Number 94-564 interprets part (1) of La.R.S. 33:1565(A) in a vacuum, not considering the independent charge of part (2), or the statutory mandate in La.R.S. 8:651. Typically, paupers' deaths will be attended by a coroner. In the rare instance when they are not, and when such individuals cannot afford a burial under La.R.S. 8:651, it is our opinion that La.R.S. 33:1565(A)(2) does, indeed, apply and that such burial is mandatory for municipalities, and arguably for parishes also.[4] *Page 4 
 If so, what guidance can you provide to assist the City withdetermining whether or not a person or family has pauper status, oris sufficiently indigent, to qualify for burial as a pauper?
A similar matter was considered in La. Atty. Gen. Op. No. 88-92. Although that opinion confused some of the terminology discussed above, we believe that it reached the correct result. That opinion is consistent with the current opinion on all of the matters discussed in response to your first question. Further, that opinion states that for an individual to be deemed a pauper, the "deceased must be carried on the parish list of paupers or those receiving assistance." Id.
We are of the opinion that this approach to determining an individual's pauper status remains correct and we hereby adopt this conclusion. Further echoing the sound reasoning of La. Atty. Gen. Op. No. 88-92, we here opine that the existence of insurance (in the name of the deceased), even if that insurance is insufficient to cover the costs of burial, means that the deceased does not qualify as a pauper. Any discrepancies in the payout of insurance towards burial and the actual costs of burial cannot be incurred by the government. Such discrepancies become a private dispute between the deceased's estate and the provider of the burial services.
We trust that this adequately answers the questions that you have posed. Should you have any further questions or concerns, please do not hesitate to contact this Office.
 Sincerely,
 JAMES D. "BUDDY" CALDWELL Attorney General
 BY: __________________________ Ryan M. Seidemann Assistant Attorney General
 JDC/RMS/tp
 cc: Lucy L. McCann, Director, Louisiana Cemetery Board
[1] We also note that La.Const. Art. VII, Sec. 14(A), which prohibits the use of public funds for private purposes, is not implicated in this situation due to the general public benefit inherent in the orderly and timely disposal of the dead. Further, to the extent that La.Const. Art. VII, Sec. 14(A), may be implicated, it is the opinion of this Office that such a provision of funds is excepted from the general prohibition by La.Const. Art. VII, Sec. 14(B)(1) (due to the statutory obligation created by the laws discussed herein).
[2] La.R.S. 8:651. We note that this Office has previously opined on the question of whether a cremation rather than a burial also satisfies the legal requirements of La.R.S. 33:1565. See, La. Atty. Gen. Op. No. 92-544, where we stated that this question must be addressed legislatively. We hereby adopt and reincorporate that conclusion by reference.
[3] In this regard, we do not intend to recall or "overrule" La. Atty. Gen. Op. No. 94-564. That opinion should simply be modified by any conflicting portions of this opinion.
[4] The mandatory nature of La.R.S. 33:1565, appears to conflict with the language of La.R.S. 46:571, which applies only to parishes, and makes the burial of paupers discretionary.See, La. Atty. Gen. Op. No. 94-564. Because the current opinion request applies only to the City of Bastrop, it is the opinion of this Office that La.R.S. 46:571 is not implicated. However, although La. Atty. Gen. Op. No. 94-564 did not address this issue, it is our opinion that a potential conflict does exist between La.R.S. 46:571 and La.R.S. 8:651 when a pauper simply cannot afford to be buried without government assistance. This conflict should also be resolved legislatively.